# REPORTS OF CASES

# SUPREME COURT,

## JANUARY TERM, 1876.

[No. 4518.]

51 205
110 586

JAMES M. REYNOLDS, ADMINISTRATOR OF THE ESTATE OF W. W. REYNOLDS, DECEASED, ISAAC REY-NOLDS, JOHN KIRK AND D. K. NEWELL *v.* CHARLES HOSMER.

WATER RIGHT CONNECTED WITH DITCH.—If a ditch for the conveyance of water for sale in the mining regions receives its supply of water from a stream at its head in the mountains, and extends a number of miles down, the water flowing through it the whole distance, and the title of the owner to the upper half or section of the ditch afterwards passes to one person, and the title to the lower half to another, the person who acquires the upper half is entitled to the exclusive use of the water from the stream at the head of the ditch.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This case was before this Court on an appeal from the judgment, and is reported in 45 Cal. 616. The facts are there stated, so that it is unnecessary to repeat them here. When that appeal was taken a motion for a new trial was pending in the court below. A new trial was granted on 24th day of July, 1874. The reason for granting a new trial

was, that in estimating the damages which the plaintiff had sustained by reason of the sale of the lower section of the ditch on the judgment enforcing the lien, the court, on the trial, took into consideration the value of the water flowing from the South Fork at the head of the ditch down the ditch. The peculiar facts in relation to the matter are thus: The ditch was constructed by the South Fork Canal Company, and extended from the South Fork of the American River to the grand reservoir near Placerville, a distance of twenty-four miles. From the head of the ditch to Long Cañon was eight miles. The Circuit Court gave Gordon a lien on the whole ditch, from which judgment an appeal was taken to the Supreme Court of the United States. Pending the appeal the whole ditch was sold on the judgment. The Supreme Court of the United States held that Gordon's lien was only on the upper section of the ditch from the South Fork to Long Cañon. The point here in controversy is, whether the owners of the lower section of the ditch, from Long Cañon to the grand reservoir, have any legal interest in the water flowing into the ditch, at its head, from the South Fork of the American River. The plaintiffs appealed from the order granting a new trial.

*Crane & Boyd, Parker & Roche* and *George Blanchard,* for the Appellants.

The canal, upon its completion, became an artificial watercourse, and as between its several owners the same relations, rights and duties existed as between the riparian proprietors of a natural stream. The former, like the latter, have a right to the continuous flow, and to a reasonable use of the water, and are bound to transmit its volume unimpaired, except from such reasonable use, to those below.

The law upon this question is thoroughly well settled in England and the United States. (*Townsend* v. *McDonald,* 14 Barb. 460.) This case was reversed in 12 N. Y. 382, but not upon the point in question. (*Beeston* v. *Weate,* 5 Ellis & Blackburn, 986; *Watkins* v. *Peck,* 13 N. H. 360; Washburn on Easements, 294, 307, 310.) .

The appropriation of the water of the South Fork of the

American River was a single appropriation for the entire canal, and the right to the use of the water was appurtenant to its whole extent, so that when one section was conveyed to Hosmer, and another to appellants, this appurtenant right passed, even though no special words indicating such an intent were used. (*McDonald* v. *Bear River Co.*, 13 Cal. 232; *Oakely* v. *Stanley*, 5 Wend. 523; *Huttemeier* v. *Albro*, 18 N. Y. 48; *Babcock* v. *Utter*, 38 N. Y. (1 Keys), 408.)

*Solomon A. Sharp and George E. Williams*, for the Respondent.

The learned counsel for plaintiffs remark that " the canal, upon its completion, became an artificial watercourse, and as between its several owners the same relative rights and duties existed as between the riparian proprietors of a natural stream." This position is precisely the position we took in the Supreme Court of the United States, and which that court decided was unsound and untenable; and had our position there been correct, the plaintiffs here would have been without any cause of action in this court. For the United States Supreme Court say that " the sections were distinct." Now, if this be true, and we submit whether true in law or fact, it is the law of the case, there can be no such thing as " several owners " of the water right, assumed by counsel.

Appellants say in their brief that they " claim an easement in the whole line of the canal, to the extent that the waters appropriated shall flow through it."

In other words, appellants claim, that all the use respondent, or his successors in interest, could make of the upper eight miles, as against the owners of the sixteen miles in controversy, would be to pass the water through the upper eight miles, and into the sixteen miles. According to appellants he could not sell or use an inch; if he did so, appellants would enjoin him from doing so.

By the Court, NILES, J.:

It is not questioned by the plaintiffs that the defendant, as owner of the upper canal between the South Fork of the

American River and Long Cañon had a right to the use of the waters of the South Fork for the purposes for which the canal was constructed. But it is contended that this admitted right of the defendant was not exclusive and absolute in him, but was shared by the plaintiffs, in some undefined relation, by virtue of their ownership of the lower canal leading from Long Cañon to the Grand Reservoir.

This claim is based upon the assumption that the entire canal, from the grand reservoir to the South Fork, was a continuous aqueduct constructed by the same party—the South Fork Canal Company—and in accordance with one original plan; and that, therefore, the right to the use of the waters of the South Fork appertained to the ditch throughout its entire length, and not to a single section or portion of it.

The defendant acquired his title by purchase at a sale under a decree of foreclosure of a mechanic's lien for labor upon and materials used in the construction of what is termed the upper canal or section.

The plaintiffs are the successors in interest of the South Fork Canal Company, the original projectors and owners of both the upper and lower sections. In the case of *South Fork Canal Company* v. *Gordon* (6 Wall. 561), the validity and extent of the lien of Gordon came in question before the Supreme Court of the United States. In that case it was earnestly claimed by Gordon that the canal, including the upper and lower sections, was an entirety, and that the whole was subject to his lien. It was contended by the canal company, with equal earnestness, that the lien should be restricted to the branch or division of the canal upon which the work was actually done, and not extended over the entire structure. The court adopted the latter view, holding that the two parts of the canal, the upper and lower sections, being constructed by different contractors and at different times, and being fed, in part, from different sources, were, in effect, separate and distinct works, and therefore confined the lien of Gordon to the upper section extending from Long Cañon to the South Fork.

Whatever might have been our opinion upon this ques-

tion as an original proposition, we must accept this decision as a determination of the rights of the parties here. In accordance with it the defendant, by his purchase under the Gordon decree, became the owner of the canal between Long Cañon and the South Fork.

We are of opinion that the defendant was entitled to the absolute use of the waters of the South Fork by virtue of his ownership of his canal, and that the court below erred in considering the value of any portion of this water right in estimating the value of the lower canal.

The new trial was properly granted.

Order affirmed.

Mr. Chief Justice WALLACE delivered the following concurring opinion:

I concur. The title of Hosmer, the respondent here, to the water flowing, or to flow, in that portion of the canal next to and adjoining the South Fork of the American River, called the "upper section," originating, as it does, in the lien of Gordon, is necessarily coextensive with that lien. If, therefore, the lien of Gordon attached to the "upper section," as a distinctive thing, and one wholly disconnected from the "lower section" of the canal, the title derived through the foreclosure of that lien must be a title to the "upper section," wholly dissevered from the remainder of the general work. That the lien of Gordon was of this distinctive and exclusive character was directly determined by the Supreme Court of the United States in a suit in equity involving the validity and extent of the lien, to which suit the parties here, or their predecessors in interest, were parties. (*Canal Company* v. *Gordon*, 6 Wall. 561.) The decree of the Circuit Court of the United States for the Northern District of California, which had proceeded upon the ground of the indivisibility of the entire canal, was reversed for error in that respect, the Supreme Court holding that the upper and lower sections of the general canal were distinct and independent works, and declaring that "a different principle would produce confusion and lead to serious evils." In view of this decision, constituting, as it does, the law of

the case between the parties here, there is no legal relation between the "upper section" and the "lower section" of the canal in controversy; there is no legal duty upon the part of the owner of the "upper section" to permit the waters of the South Fork of the American River to flow into the "lower section" of the canal, and consequently, there was error in allowing the value of these waters to be considered in fixing the value of the "lower section."

Neither Mr. Justice CROCKETT nor Mr. Justice RHODES expressed an opinion.