[No. 17162.  Department Two.  May 16, 1923.]

JOHN WEITENSTEINER, *Respondent*, v. ENOCH E.
ENGDAHL *et al., Appellants.*[1]

WATERS AND WATER COURSES (1, 58)—APPROPRIATION—ADVERSE
CHARACTER. The rule that no rights can be acquired by the appro-
priation of water short of adverse user for the statutory period, as
against the owner of private property, does not apply as against
subsequent appropriators; hence prior appropriation of waters on
railroad lands subsequently acquired by the appropriator, and put-
ting it to a beneficial use, vests good title, as against subsequent ap-
propriators.

SAME (6, 7)—ACTUAL USE—BENEFICIAL PURPOSE—EVIDENCE—SUF-
FICIENCY. A beneficial use of waters appropriated for use on a home-
stead is shown by evidence that it was used in preparing the land
for cultivation, and for domestic purposes and irrigating a garden
and crops as the land was cleared.

JUDGMENT (219)—RES JUDICATA—IDENTITY OF CAUSES. Judgment
in a controversy over the right to maintain an irrigation ditch
across certain lands, is not *res adjudicata* or a bar to an action to
enjoin the diversion of the waters, involving another ditch, the
right to divert the waters not being in question in the former suit.

WATERS (10, 58)—PRESCRIPTIVE RIGHTS—PRIORITY OF USE. The
open and adverse use of waters of a creek for thirty years gives no
right to the use of all the waters, where, for a longer period, another,
having a superior right, without let or hindrance, diverted a certain
quantity thereof and put the same to a beneficial use.

SAME (11, 58)—ADVERSE USE—PERIOD. An adverse use of waters
for a beneficial use for more than ten years, confers a right thereto
by prescription, as against a riparian owner.

COSTS (8)—PREVAILING PARTY. A prevailing party in equity
wrongfully deprived of water awarded to him, is entitled to his
costs of suit.

Appeal from a judgment of the superior court for
Stevens county, Miller, J., entered September 16, 1921,
upon findings in favor of the plaintiff, in an action to
enjoin the use of the waters of a stream, tried to the
court. Affirmed.

[1]Reported in 215 Pac. 378.

*Charles P. Lund* and *Albert I. Kulzer,* for appellants.

*Wentz & Bailey* and *W. Lon Johnson,* for respondent.

FULLERTON, J.—The respondent, Weitensteiner, plaintiff below, is the owner of the northeast quarter of section 12, and the southeast quarter of section 1, all in township 30, north, range 40, east of the Willamette Meridian. The first of these quarter sections he acquired under the homestead laws of the United States by settlement thereon, initiated in 1889. The second of the quarter sections he acquired by mesne conveyances from the Northern Pacific Railway Company; entering into an executory contract for its purchase in 1908, and paying out and receiving a deed therefor in 1912. The railway company received its title to the property by grant from the United States, the grant attaching to the particular tract in 1884.

The appellants Engdahl own the southweast quarter and the southeast quarter of section 6, in township 30, north, range 41 east of the Willamette Meridian. The first of these quarter sections they acquired through mesne conveyances from one John Mally in 1911, who acquired it by homestead under the laws of the United States by settlement thereon initiated in 1889. The second of the quarter sections they acquired from one Mike Mally, also in 1911, who acquired the land under the homestead laws of the United States, by settlement thereon initiated in 1902.

By reference to the manner in which the government surveys are projected over the government domain, it will be observed that the east boundary line of the respondent's quarter section in section 1, is the west boundary line of the southwest quarter section in section 6; that the respondent's quarter section

in section 12 abuts upon the south boundary of his quarter section in section 1; and that the quarter section purchased by the appellants from Mike Mally lies immediately east of the quarter section purchased by them from John Mally. All of the lands are in an arid district, and are unproductive without irrigation.

A stream, known as Grouse Creek, flows westerly through the lands of the appellants and onto the quarter section of the respondent in section 1, from whence it turns to a northerly direction, emptying in a lake located on the northern part of that section. In the fall of 1890, following his settlement on the quarter section in section 12, the respondent entered upon the homestead settlement of John Mally, and, by means of a dam and ditch, diverted water therefrom which he conveyed onto section 12, for domestic and irrigation purposes. Afterwards the right to maintain this ditch became a subject of controversy between the respondent and John Mally, and, in litigation growing out of the controversy, it was determined that the respondent's right to construct and maintain the ditch over Mally's property was a mere permissive right, and was revocable at the will of Mally.

At about the time he made the appropriation on Mally's property, the respondent entered onto section 1, below the land of Mally, and diverted therefrom about one-third of the flow of the stream at that place, and conveyed the water so diverted onto his homestead quarter by means of a ditch constructed wholly on the southeast quarter of section 1. This ditch he has maintained, with slight changes, since the original diversion down to the present time, using the water for domestic and irrigation purposes wholly on his homestead quarter section until his purchase of the quarter section in section 1, and since that time upon both quarter sections. The quantity diverted has

been at all times substantially the same; equalling approximately one and one-half cubic feet per second of time.

Sometime after the respondent made these diversions of the water, Mally went upon the southeast quarter of section 6, above mentioned, which was then government land, and diverted water from the creek named for the purpose of irrigating his homestead quarter section. This water he carried to his homestead by means of two ditches, one constructed on each side of the stream. The record does not show with definiteness the quantity of water thus diverted, but it appears that it was not sufficient in quantity to affect the quantity flowing into the respondent's ditch at his lower appropriation.

After Mike Mally entered the southeast quarter of section 6 as a homestead, he began irrigating thereon from the waters of Grouse Creek, making use of the ditches constructed thereon by John Mally. It does not appear, however, that this use diminished the flow in the creek at the respondent's place of intake below the quantity he usually diverted therefrom.

The respondent's quarter section in section 12 is non-riparian to Grouse Creek; not only because of the artificial boundaries of the public surveys, but because of a ridge extending between the land and the creek, placing the lands in a different water course.

In August, 1920, the appellants, for the purpose of irrigating their lands in section 6, diverted practically all of the waters in the creek, leaving not more than six-tenths of a cubic foot per second of time to reach the intake of the respondent's ditch, whereupon the respondent began the present action to restrain them from interfering with the flow of the stream to the extent of his prior appropriation.

The lower court, on the trial of the cause, in addition to .finding in substance the matters hereinbefore set out, made the following findings:

"(9) That the appropriation of the waters of Grouse Creek by the plaintiff for use upon his homestead lands in Section 12 was prior in time and superior to any appropriation of the waters of said stream by defendants or their predecessors in interest and also prior in time and superior to any riparian rights attaching to the SE¼ of said Sec. 6.

"(10) That at the time of the purchase of said lands by defendants there was in cultivation and under irrigation on the SE¼ of Sec. 6, about 40 acres of land and the amount of the waters of Grouse Creek theretofore and then being used by the defendants and their predecessors was less than the amount to which defendants are entitled by reason of the riparian rights of the SW¼ of said Sec. 6, and the use of such waters by the defendants and their predecessors in interest to the extent as used by them at the time aforesaid, and since, did not interfere with the appropriation by plaintiff for the benefit of his homestead lands in section 12 or the riparian rights of the SE¼ of said section one, except for the short interruptions referred to in the Finding Seven.

"(11) That during the height of the irrigation season and waters of Grouse Creek run from 4.42 second feet in an extreme dry season to 5.68 second feet in an ordinary season and that during the remainder of the year there is sufficient water to fully irrigate all the irrigable lands of the plaintiff and defendants. That the irrigation season extends from May to September, both inclusive.

"(12) That the number of acres capable of irrigation on the several tracts of land in controversy herein is as follows:

Plaintiff's NE¼ of Section 12—about 80 acres.
Plaintiff's SE¼ of Section 1—about 80 acres.
Defendants' SW¼ of Section 6—about 130 acres.
Defendants' SE¼ of Section 6—about 30 acres.

"(13)  That 3.25 sec. feet of water would be sufficient to irrigate the 130 acres of irrigable land of defendants, Engdahl and wife, in the SW¼ of Sec. 6 to the full extent of the soil, but that an allowance must be made of 20% for seepage from ditches and with this allowance 4.06 sec. feet could be beneficially used on said lands; and that on the lands of plaintiff, in the SE¼ of Sec. 1, under the same allowance, 2.50 sec. ft. could be beneficially used, and that on the defendants' lands in the SE¼ of Sec. 6, under the same allowance, .94 sec. ft. could be beneficially used.

"(14)  That the three riparian tracts have the same character of soil and require the same amount of water per acre for irrigation and that the amount of water to be distributed to each, according to the number of acres of irrigable land would be as follows:

SE¼, Sec. 1, 80 acres, 33⅓% of said waters.

SW¼, Sec. 6, 130 acres, 54⅙% of said waters.

SE¼, Sec. 6, 30 acres, 12½% of said waters.

Provided, however, that the riparian rights of the SE¼ of said section 6, and its right to the use of such percentage or any percentage of the waters of said stream is subject and subordinate to the prior appropriation for the plaintiff's NE¼ of Sec. 12, and his right to the use of 1.5 sec. feet of the waters of said stream thereunder.

"(15)  That in the former action wherein John Weitensteiner was plaintiff and John Mally and wife were defendants, decided by the superior court of Stevens county, Washington, on February 1, 1909, and pleaded in the answer of the defendants as a former adjudication of the matters involved in this action, the riparian rights of the SE¼ of Sec. 6, then belonging to Mike Mally were not in issue and the appropriation of plaintiff in the SE¼ of Sec. 1 made in 1890 were not passed upon by the Court, and the riparian rights of the SE¼ of Sec. 1 were not adjudicated in said action, the only question finally determined by the Court being a diversion of the water on the SW¼ of Sec. 6, and the carrying of same through a higher ditch over the lands of the defendants in that action to the lands of the plaintiff therein, situate in the NE¼ of Sec. 12 where

they were used for domestic purposes and for irrigation of lands now irrigated by pumping from a pond situate on plaintiff's land.''

And as conclusions of law, found:

''(1)    That the riparian rights of the plaintiff on the SE¼ of Sec. 1, and of the defendants, Enoch E. Engdahl and wife, on the SW¼ of Sec. 6, are equal and prior to any appropriations made by either plaintiff or defendants' predecessors.

''(2)    That the appropriation of the plaintiff for the benefit of his homestead lands in the NE¼ of Sec. 12, to the extent of 1.5 sec. ft. is prior and superior to the appropriations of the defendants' predecessors, and prior to and superior to the riparian rights of the defendants on the SE¼ of Sec. 6.

''(3)    That the validity of the plaintiff's appropriation made in 1890 and of his riparian rights as to the SE¼ of Sec. 1 was not adjudicated in the former action between plaintiff and John Mally and wife.

''(4)    That the use of the waters of Grouse Creek by the defendants and their predecessors—John Mally —either as appropriators or riparian owners on the SW¼ of said Sec. 6, and by the defendants and their predecessors, Mike Mally, on the SE¼ of Sec. 6 was not sufficient to constitute adverse user for ten full years prior to the commencement of this action, and that defendants have no prescriptive right superior to the riparian rights of plaintiff on SE¼ of Sec. 1, or his rights by appropriation on NE¼ of Sec. 12.

''That plaintiff is entitled to 33⅓% of the waters of Grouse Creek on the SE¼ of Sec. 1 as the riparian owner thereof; that the defendants are entitled to 54⅙% of the waters of Grouse Creek on the SW¼ of Sec. 6 as the riparian owners thereof and to 12½% of the waters of said stream on the SE¼ of Sec. 6 as the riparian owners thereof, provided, however, that the riparian rights of defendants as to the SE¼ of said Sec. 6 are subject and subordinate to their prior appropriation of plaintiff for the benefit of the NE¼ of Sec. 12 and the said NE¼ of Sec. 12 is entitled to the use of 1.5 sec. ft. of the waters of said stream prior

to the use of any of the waters of said stream on the SE¼ of Sec. 6.''

Judgment was entered in accordance with the findings and conclusions, and the Engdahls appeal.

The appellants first contend that the respondent acquired no rights to the waters of the stream as against them or their predecessors in interest by his appropriation on section 1, in 1890; the argument being that a valid appropriation can be made only upon government lands, and that this appropriation was made on land in the private ownership of the Northern Pacific Railway Company. But we cannot think the contention tenable. Unquestionably, as against the owner of the private property on which the appropriation is made, no rights could be so acquired short of adverse user for the period of the statute of limitations, but as against subsequent appropriators not in privity with the owner of the land on which the appropriation is made, such an appropriation is valid. No rule of public policy or mandate of public statute forbade the act, and hence it was valid as against every person save those adversely affected by it. Neither the appellants nor their predecessors in interest were so adversely affected. They did not then have, nor have they since acquired, any right in the property involved. On the contrary, the respondent himself has acquired the property, and no one can now rightfully question the validity of his original appropriation.

In 2 Kinney on Irrigation and Water Rights (2d ed), §766, it is said:

''Contrary to the rule of riparian rights at common law, where the right to the use of the water is dependent upon the ownership of the land adjoining which or through which the stream flows, a water right based upon the doctrine of appropriation in the Western States does not depend upon the legal title, nor, in

fact, upon any title to or the possession of lands on the streams or other bodies of water, or elsewhere. But a water right is simply an exclusive possessory right, acquired by the diversion of the waters of a stream in a lawful manner, and the appropriation consummated by either its application to some beneficial use or purpose, or at least conducted to the place where it is to be used, prior to its appropriation, diversion,' and use by some one else. All the authorities agree upon the proposition that it is unnecessary that the appropriator in order to be entitled to the use of the water, as at common law, should have located or taken possession of any tract or parcel of the public domain bordering upon the stream from which the appropriation is made. A valid appropriation may be made for the irrigation of lands, or for any other beneficial use, not situated upon or near the stream from which the water is taken. The very object of the appropriation may be to conduct the water from the stream through a ditch or canal, across the intervening lands, to irrigate a tract of land which the appropriator possesses far from the natural stream, or to work a mining claim or run a mill. In other words, the universal rule is that a water right, or the right to the use of the water, under the doctrine of appropriation, is not in any way dependent upon the *locus* of its application to the beneficial use designed.''

Also, in § 767, it is said:

''Not only is it unnecessary for the owner of a water right, under the doctrine of appropriation, to own or possess land adjoining the stream from which the water is taken, as stated in our last section, but a perfect title to a water right may be had and maintained without the owner thereof having the title to, or in the possession of, any land anywhere, with the bare exception of the easement or other right of way for the ditch or canal to conduct the water to the place of use. While the common law requires ownership or the possession of land adjoining the stream in order to acquire a riparian right to the use of the water, the Arid Region Doctrine of appropriation is the doctrine of the

separate ownership of the land and the water right. Hence it follows that a good title to a water right may be had without the owner thereof having the title or possession of any land, except the ditch or canal; and, upon the other hand, if the water of a certain stream has all been appropriated before the settlement of the land upon its banks, even in those States which recognize both the common law of riparian rights and the doctrine of appropriation, the settlers who afterward become the riparian owners may acquire no right to the use of the water.''

The principles here announced are applicable to the respondent's situation. He not only appropriated the water and put it to a beneficial use, but he had title to the ditch through which he diverted it, good as against all the world except the owner of the land over which the ditch extended. The appellants, being strangers to that title, cannot therefore successfully urge that his appropriation was invalid.

The cases of *Sander v. Bull,* 76 Wash. 1, 135 Pac. 489; *Still v. Palouse Irr. & P. Co.,* 64 Wash. 606, 117 Pac. 466; *Gose v. Blalock,* 21 Wash. 75, 57 Pac. 342; *Sander v. Wilson,* 34 Wash. 659, 76 Pac. 280; *Nesalhous v. Walker,* 45 Wash. 621, 88 Pac. 1032; and *Mason v. Yearwood,* 58 Wash. 276, 108 Pac. 608, 30 L. R. A. (N. S.) 1158, are cited to maintain the principle contended for by the appellants, but we cannot think them in point. The cases are, for the greater part, too long and complicated in their facts to be here reviewed specifically, but an examination of them will show that in none of them was the question here presented involved, and we find in them nothing contrary to the principle we here announce.

It is next contended that the water diverted was not put to a beneficial use prior to the time the rights of the appellants' predecessors in interest attached to the stream. But we think the evidence clearly demon-

strates that it was so. Aside from the fact that the respondent was entitled to appropriate so much of the water as the future necessities of his homestead might demand, he applied the water diverted to preparing the land for cultivation, by washing out the pine needles, pitch and turpentine it contained, which he testified without contradiction was necessary for the growing of crops thereon. He also used it for domestic purposes, for watering his stock, and from the begin-- ning for irrigating a garden patch. As he cleared the land, he extended its use for irrigating the crops there- on, and at the time of the trial of this action, the quan- tity grown amounted to considerable values.

The third contention is that the judgment in the former case of *Weidensteiner v. Mally,* 55 Wash. 79, 104 Pac. 143, is *res adjudicata* of this action. But while counsel have devoted a considerable space in their brief to a discussion of this contention, we shall not follow them in their arguments. An examination of the record, as well as of the decision of this court (55 Wash. 79), convinces us that the controversy in that case involved no question of the right of the appellants to divert waters from the creek, but was solely a controversy over his right to maintain a ditch across the homestead claim of John Mally, another and entirely different ditch than the one here involved. Under no circum- stances, therefore, can the adverse judgment in that case be *res adjudicata* in this one.

The fourth contention is that the appellants have a right to the use of all of the waters of the creek in ques- tion by prescription. It is contended that for more than thirty years they and their predecessors in in- terest have used the waters of the creek "openly, no- toriously, adversely, and under a claim of right," and "that the ditches built and maintained by them were

and are capable of carrying more than enough water to irrigate all of the land on the" John Mally homestead. This as a statement of fact is possibly true. But it does not follow that because thereof the appellants are entitled to appropriate all of the waters of the creek to their own use. The respondent also has prescriptive rights in the water. For a longer period of time he has diverted from the creek, and employed in a beneficial use, without let or hindrance, some one and five-tenths cubic feet of water per second of time, and to this quantity he has a superior right to any appropriation made by the appellants and their predecessors. The trial court awarded him no more than this as an appropriator, and against the award the appellants cannot justly complain.

The fifth contention is that the court erred in its determination of the area of irrigable land on the several quarter sections, resulting in an inequitable apportionment of the waters to the parties under their riparian rights; the quantity awarded to the appellants being too small. But as to this matter, it is sufficient to say that the trial court investigated it with painstaking care, and that, from our examination of the evidence, we find no cause for disturbing its conclusions.

The appellants complain of that part of the judgment which makes subject to the respondent's prior appropriation for use in section 12, the riparian rights to which it found the southeast quarter of section 6 to be entitled. But if the respondent's prior appropriation was not sufficient to entitle him to this award, he had it by prescription, as more than ten years elapsed between such appropriation and the settlement of Mike Mally on the quarter section.

Finally, it is urged that the court erred in allowing

the respondent's costs in the lower court. But we find no error in this. The appellants wrongfully deprived the respondent of water to which he was justly entitled, compelling him to resort to an action in the courts for redress. In the action he was the prevailing party, and for that reason the court did not err in awarding him costs. He will also recover his costs in this court.

· The judgment is affirmed.

MAIN, C. J., PARKER, HOLCOMB, and TOLMAN, JJ., concur.