[No. 34653.   Department Two.   April 16, 1959.]

RAYMOND F. DRAKE et al., Respondents, v. J. D. SMITH et al., Appellants.[1]

[1]Reported in 337 P. (2d) 1059.

*Guttormsen, Scholfield, Willits & Ager* and *Alfred McBee,* for appellants.

*Barclay & Ward* and *Hugh R. Ridgway,* for respondents.

WEAVER, C. J.—This is a consolidated action by five land-owners. They seek damages for the pollution of a stream from which they take water for domestic use by means of a community water system. Defendants appeal from a money judgment against them.

Although defendants direct fourteen assignments of error to as many material findings of fact entered by the trial court, there is substantial evidence in the record to establish the following:

The properties of plaintiffs, together with that on which the diversion point of the community water system is located, were once owned by Amasa Everett as one tract. None of the plaintiffs, except one, owns land riparian to the stream from which the water system originates.

In 1908, the Grassmere Shingle Company, a tenant of Mr. Everett, established a mill just north of the properties

now owned by plaintiffs. A number of homes were erected near the mill. With the permission of Mr. Everett, one of the owners of the shingle company

". . . constructed a predecessor of the present water works, the same consisting of a stand pipe at or near the present location of the present source of water supply, and with a 4″ wooden line leading from this stand pipe to the line for mill purposes and to the homes for domestic use. In this manner, the original diversion of a portion of the stream originated."

In 1913, use of the mill was discontinued; the water system was turned over to the occupants for their personal use in the houses next to the mill.

In 1916, L. R. Everett, son of Amasa Everett, moved into the premises now owned by one of the plaintiffs. He connected with the pipe line at or near the mill site and obtained water for domestic use.

In 1923 and 1925, written agreements were made between Amasa Everett and the plaintiffs, or their predecessors in title, granting to the plaintiffs, or their predecessors, the right to maintain a pipe line from the point of diversion from the creek, across Amasa Everett's property, and to the homes of the parties.

The community water system, from its construction in 1908 to the present time, has been continuously applied to a beneficial use. It has been improved by the construction of a dam, a cement settling basin, and about sixteen hundred feet of wooden pipe has been replaced with a two-inch galvanized pipe.

In late 1954, defendants entered into a logging agreement with the owners of the land immediately upstream from the diversion point of the community water system. In 1955, defendants commenced their logging operations. They constructed a mill on the bank of the stream; constructed creek crossings without culverts, which caused the stream to back up and overflow the creek bed, and thus, carry dirt and debris downstream; and conducted their logging operations in such a manner that the trial court found

"That on account of the above described acts of defen-

dants and the condition in which they have left the scene of the logging operation and mill operation as above described, the damage to the plaintiffs' real property, as a result of the pollution of their water supply is permanent in nature."

The trial court concluded: (1) That plaintiffs' water supply had been polluted by defendants' logging operation, and, by reason of the condition in which defendants left the property on which they conducted their logging, the pollution of the water supply was permanent. (2) That plaintiffs had water rights by appropriation, which rights had attached to their lands prior to the Water Code of 1917. (3) That plaintiffs were entitled to damages (a) for inconvenience and annoyance and (b) for permanent depreciation in the value of their real property springing from the nuisance created by defendants' operations.

■ There is substantial evidence, although sharply conflicting, to support the trial court's finding that defendants' actions resulted in the pollution of the water supply; hence, we will not disturb it. *Hinz v. Lieser*, 52 Wn. (2d) 205, 324 P. (2d) 829 (1958), and cases cited.

■ We do not agree with defendants' contention that there is no evidence to support the finding that the pollution is permanent. There is evidence, which the trial court chose to believe, that defendants had no intention of removing the sawdust pile, tree tops, and similar debris from the stream, nor of removing the fills from the creek. This is sufficient to meet the test announced in *Haveman v. Beulow*, 36 Wn. (2d) 185, 217 P. (2d) 313, 19 A. L. R. (2d) 763 (1950), wherein this court said:

"The court was of the opinion that the damage to the land should be regarded as permanent, and that, by reason of the destruction of the wells for domestic uses, their respective farms had been depreciated in value. An injury of the kind in question may be permanent in a legal sense, though not coextensive with perpetual, unending or unchangeable. *Union Oil & Mining Co. v. Bowman,* 144 Okla. 54, 289 Pac. 296."

■ Defendants'· contention that the doctrine of appropriation of water applies·only to public lands has been· rejected by this court.

"But we cannot think the contention tenable. Unquestionably, as against the owner of the private property on which the appropriation is made, no rights could be so acquired short of adverse user for the period of the statute of limitations, but as against subsequent appropriators not in privity with the owner of the land on which the appropriation is made, such an appropriation is valid. No rule of public policy or mandate of public statute forbade the act, and hence it was valid as against every person save those adversely affected by it.

"  .   .   .

"  .   .   . The appellants, being strangers to that title, cannot therefore successfully urge that his appropriation was invalid." *Weitensteiner v. Engdahl,* 125 Wash. 106, 215 Pac. 378 (1923).

In the instant case, as in the *Weitensteiner* case, *supra,* water had been appropriated from a stream and put to a beneficial use long before the adoption of the Water Code of 1917. See *Hunter Land Co. v. Laugenour,* 140 Wash. 558, 570, 250 Pac. 41 (1926).

■ Next, defendants urge that plaintiffs did not acquire water rights when they acquired their property because water rights were not specifically mentioned in certain deeds. We do not agree.

A water right is an interest in real property appurtenant to the land and passes to the grantee when the land is conveyed. *Tedford v. Wenatchee Reclamation Dist.,* 127 Wash. 495, 499, 221 Pac. 328 (1923), and cases cited.

The trial court allowed damages (a) for the permanent depreciation in value of plaintiffs' properties, and (b) for personal discomfort and annoyance caused by pollution of the water, which made it necessary for plaintiffs to haul water to their premises for domestic use. Defendants deny plaintiffs' right to damages, as a matter of law, and then urge that plaintiffs' proof fails to disclose measurable or calculable damages.

■ "It is the general rule that where the injury caused by the pollution is permanent and irreparable, the measure of damages is the difference in the market value of the property before and after the creation of the nuisance." 56 Am. Jur. 841, Waters, § 422.

Our decisions in *Haveman v. Beulow,* 36 Wn. (2d) 185, 217 P. (2d) 313 (1950), and *Riblet v. Spokane-Portland Cement Co.,* 45 Wn. (2d) 346, 274 P. (2d) 574 (1954), are determinative of the issues raised by defendants' assignments of error directed to the amount of damages allowed plaintiffs.

■ In the *Haveman* case, *supra,* the court found that the pollution of plaintiff's well by defendants' maintenance of a nuisance was permanent. The court said:

*"In addition to depreciation in the market value of the farms of respondents,* the court allowed the reasonable cost and expense of securing a water supply by hauling water between the time of the commencement of the action and the trial. This expense was necessarily incurred and was a natural and probable consequence of the act of appellants in causing the well water to become polluted." (p. 191) (Italics ours.)

In the *Riblet* case, *supra,* the nuisance was continuous. This court adopted the majority rule set forth in an exhaustive annotation in 142 A. L. R. at 1322, as follows:

"The question whether an occupant of real estate (whether owner or not) may recover damages for discomfort, annoyance, etc., personally resulting to him from a nuisance, *in addition to, or separate from, any sort of property damages,* is most distinctly presented in cases where the claim for the personal damages is accompanied by a claim for depreciation in rental or use value of premises. *In most jurisdictions the rule is that the personal damages are recoverable in addition to, or separate from, damages for diminution in rental or use value.* This rule seems clearly to involve the idea that the law will not presume that one responsible for a temporary nuisance will continue it, and will not require the occupant of premises to abandon them to avoid consequences to his person." (Italics ours.)

A review of the record discloses that there is substantial evidence to satisfy the application of the rules, as above announced, and to justify the amount of the awards.

The judgment is affirmed.

HILL, DONWORTH, ROSELLINI, and FOSTER JJ., concur.

June 4, 1959. Petition for rehearing denied.