[No. 582. Decided March 6, 1889.]

S. R. GEDDIS v. GEORGE W. PARRISH.

WATER RIGHTS—APPROPRIATION—PUBLIC LANDS.

To maintain a water-course the water must usually flow therein in a certain direction, and in a regular channel, having banks. The stream must have a substantial existence, but the fact that its source is a flowing spring does not change its nature, or exempt the water from appropriation.

Where one has appropriated the waters of a stream flowing across public lands, by erecting on his own land a ditch, one acquiring title from the United States takes subject to such appropriation, and he cannot, by obstructions on his own land, divert the water from the ditch of the prior appropriator.

The fact that the owner of the lower land acquired title through purchase of possessory rights merely, and not by deed, does not affect his title to the water-rights, as they passed as appurtenant to the land, a complete title to which was obtained through the sale and possession thereunder of the possessory rights.

*Appeal from District Court, Kittitas County.*

Action by George W. Parrish against S. R. Geddis to enjoin the obstruction of an irrigating ditch. Judgment for plaintiff, and defendant appeals.

*Allen, Whitson & Gilliam*, and *A. Mires*, for appellant.

*Daniel Gaby*, for appellee.

The opinion of the court was delivered by

ALLYN, J.—Parrish, appellee, seeks to establish his title to an irrigating ditch having its flow from a spring upon the land of appellant, and across which it flows to the property and ditch of appellee (plaintiff). Appellant contends that the original flow from this spring was slight, and at times scarcely at all, and the flow, now large and valuable, is from the seepage of irrigation above; that the spring is not a flowing one; and also denies prior appropriation to appellant's title. The evidence of a large number of witnesses, who testified to knowledge during the last ten to seventeen years of this particular locality, satisfies us that there was a flowing spring, from which a natural watercourse of considerable size had its origin, which this evidence traces in its course for more than a mile, and was, to some extent at least, known by the name of "Indian creek." It is also reasonably clear that Johnson, who sold to Mehan and Mehan to Parrish, settled upon this land now owned by Parrish in 1876, and shortly thereafter, in the same

year, appropriated the stream referred to for the use of his stock, and irrigating in a small way his land. It also appears that appellant derives title from one Schleif, who entered the land upon which the spring is situated January 7, 1877, and the following year secured a patent. Schleif sold to appellant the same year.

For the purpose of this case, we may consider as established that in the spring of 1876, appellee, through his grantors, appropriated the water then flowing from and across public land of the United States by causing it to take a different channel, a ditch across this land, which the appellant later settled upon, and since acquired title, and that this flow of water continued until obstructed by defendant, in May, 1884. The appellant, having subsequently acquired title to such public lands through his grantor, subsequent, in point of time, to appellee's grantors, in May, 1884, by a dam upon his own land, so obstructed and changed the course of this water that it fails to flow over the land of appellee at all, and causes him to lose the entire use of same. To maintain the right to a water-course, it must appear that the water usually flows therein in a certain direction, and in a regular channel with banks and sides. It may not flow continuously, and it may at times be dry. It must have, however, a substantial existence. That such a stream or water-course may have its head or source from a flowing spring, as we find in this case, in no way changes its nature. The water from such spring is the subject of appropriation as certainly as the water of a river. Ang. Water-Courses, 138, 149; Gould, Waters, ½ 285. That one may lawfully appropriate a stream of water flowing upon or across the public lands of the United States and divert it to his own use, acquiring thereby a vested right in such stream which a subsequent grantee of such public lands of the United States cannot materially interfere with or destroy, we think indisputable, and have endeavored to plainly pronounce as a precedent in *Ellis v. Improvement*

*Co., ante,* p. 572, the general principles of which may well be applied to this case. There is an evident distinction between the rights of littoral proprietors who acquire title to the land, and thereby water-rights, with no question of appropriations conflicting either above or below, and who thereafter use the water. Each, in such case, must so use as not to interfere, unnecessarily, with the other; as each has an equal right. The same general principle prevails where titles have been acquired to lands over which water flows with no question of prior appropriation preceding such title. Each may use, in a reasonable way, but must not unnecessarily injure the other. But an appropriator of water may acquire rights superior to a fee subsequently acquired from the government, as is recognized by act of congress of July 26, 1866, although the water runs over or along the lands thus subsequently acquired. In such cases, the subsequently acquired title must be considered as taken with notice of the prior appropriation. A vested right, having been acquired in land, or a complete title, carries with it a right to the water as above stated, unless a prior appropriation of the water or right upon or over such land has taken precedence of such vested right or title, as illustrated fully in *Ellis v. Improvement Co., ante,* p. 572. Such use must be had by the owner upon whose lands water runs, where a right by prior appropriation has vested, as not to materially affect the prior appropriator below him. He takes subject to such right, and with notice of it. While, therefore, a reasonable use of the water by him would be sustained, if the water is thereafter allowed to flow into the head of the prior appropriator's ditch, yet, under the cloak of such use, or even for actual irrigation, he cannot hold or materially divert the water-course so as to deprive or injure others below him, who were prior in point of use. As was said in 60 Cal. 408 (*Ditch Co. v. Canal Co.*): "The right of plaintiff to have the water flow in the river to the head of its

ditch, is an incorporeal hereditament, appertaining to its water-course" (that is, its ditch). "Granting that plaintiff does not own the *corpus* of the water until it shall enter its ditch, yet the right to have it flow into the ditch appertains to the ditch." See, also, *Hill v. Lenormand,* 16 Pac. Rep. 266; *Atchison v. Peterson,* 20 Wall. 507; *Basey v. Gallagher,* 20 Wall. 670; Gould, Waters, ₰ 228; *Himes v. Johnson,* 61 Cal. 259; *Canal Co. v. Canal Co.,* 53 Cal. 563; *Reynolds v. Hosmer,* 51 Cal. 205; *Gregory v. Nelson,* 41 Cal. 278; *Clark v. Willett,* 35 Cal. 534, and others; also, *Mining Co. v. Carpenter,* 4 Nev. 534; *Barnes v. Sabron,* 10 Nev. 217; *Strait v. Brown,* 16 Nev. 317. Applying these principles to the facts as we have found them, the question seems easy of solution. But we should notice, in passing, the claim by appellant of loss by Parrish of the water-right, as obtained through Johnson and Mehan, because the title to the land was acquired by Parrish through purchase of possessory rights merely, and not by deed, it being claimed that the water-right was thereby lost and abandoned, as no deed of conveyance of it was made. We consider the sale of these possessory rights as passing a complete title, possession having been taken under them, and now held by such purchaser, a means of conveyance not unfrequently adopted in such cases. The water-right as an appurtenant to the land passed with it, and by sale of Johnson and Mehan, and possession taken and now held by Parrish under them, all water-rights passed with the land as the land itself passed. Gould, Waters, §§ 305-307; Pom. Rip. Rights, § 58; Ang. Water-Courses, and other authorities cited by appellee. Returning to the main question, in the light of the principles above announced, it follows that Geddis would have the right to use the water from the spring upon his own land, and the right to the reasonable use of the water as it descends over his land; but such use of the stream is subject to the use of Parrish below, who, through his grantors, has first used it, and of which use

Geddis, through his grantor, had notice, and, holding and using entirely subject to such prior appropriation, Geddis could not materially interfere with the natural flow of the stream; and it is almost unnecessary to add that he could by no means, as here, obstruct and divert the water from Parrish, the first appropriator, merely because Parrish was below him, and because this could be done by placing an obstruction upon his own land. He would have no more right to place such obstruction in the water-course upon his own land than he would have upon the land of another. The obstruction of the course, and the diversion of the stream, is thus wrong, and it matters little where or upon whose land it occurs. Let the decree of the court be affirmed.

LANGFORD, J., concurs.

NASH, J., concurs in result.