[No. 26715. *En Banc.* November 19, 1937.]

PHILIP LAWRENCE, *Appellant,* v. WILLIAM K. SOUTHARD, *Respondent.*[1]

*B. E. McGregor,* for appellant.

*Stephen E. Chaffee,* for respondent.

*The Attorney General, Fred J. Cunningham,* and *John C. Hurspool, amici curiae.*

MILLARD, J.—In January, 1937, the plaintiff entered into a contract to purchase from the defendant a tract of land,

[1]Reported in 73 P. (2d) 722.

" . . . together with a perpetual water right for the use of sufficient amount of water to beneficially irrigate said land and to the same extent as has heretofore been used thereon for irrigation purposes"

in Yakima county. This land in its natural state is arid and has no value, but when supplied with a sufficient amount of water to beneficially irrigate it and to the same extent as has been used thereon for irrigation purposes since 1911, the land is very productive and valuable for agricultural purposes.

The land in question is within the Sunnyside division of the Yakima reclamation project, which was approved by the secretary of the interior in 1906 pursuant to the reclamation act of 1902. Under the provisions of that act, the secretary of the interior caused reservoirs to be constructed for impounding the waters of the Yakima river, which is a non-navigable stream, and constructed an irrigation system to deliver the natural flow and impounded water to this tract and to other lands within the Sunnyside division.

Pursuant to the regulations promulgated by the secretary of the interior, the then owner of the tract of land involved in this cause, on August 1, 1911, made an application for a water right, which, among other things, provided:

"The quantity of water to be furnished hereunder shall be 3 acre feet of water per annum per acre of irrigable land, as aforesaid, measured at the land; or so much thereof as shall constitute the proportionate share per acre from the water supply actually available for the lands under said project; Provided, That the supply furnished shall be limited to the amount of water beneficially used on said irrigable land: . . ."

It was further provided that the applicant would pay the construction charges in the sum of fifty-two dollars

an acre, which charges were made a lien against the land.

A certificate of filing water right application was issued to the applicant. That certificate provided that the

". . . applicant shall be entitled to receive, subject to the payment of the annual charges for building, operation, and maintenance, three acre feet of water per annum per acre of irrigable land herein described, or so much thereof as shall constitute the proportionate share per acre from the water supply actually available for the lands under said project; provided, that the supply furnished shall be limited to the amount of water beneficially used on said irrigable land."

In the year 1911, the land was put under cultivation, and at all times subsequent thereto the bureau of reclamation caused to be delivered to the land a sufficient amount of water to beneficially irrigate the land. On October 17, 1930, the secretary of the interior promulgated a public notice which provided that,

". . . during the year 1931 and subsequent years, until further notice, water deliveries in that district will be limited to three (3) acre feet per irrigable acre per year, as specified in the said contracts and applications."

The notice further provided,

". . . that so long as there is surplus stored water available not required to meet the contract obligations of the United States to other parties, water in excess of three (3) acre feet may be rented by water users."

This notice, of course, had reference to the land described in the sale contract of the plaintiff and the defendant.

During the past fifteen years, the bureau of reclamation has delivered to the land involved in this action

for beneficial use thereon the following amounts of water: 1920, 4.05 acre feet; 1921, 4.99 acre feet; 1922, 3.40 acre feet; 1923, 5.03 acre feet; 1924, 4.97 acre feet; 1925, 4.67 acre feet; 1926, 4.45 acre feet; 1927, 4.10 acre feet; 1928, 4.13 acre feet; 1929, 4.32 acre feet; 1930, 4.80 acre feet; 1931, 3.83 acre feet; 1932, 3.50 acre feet; 1933, 5.35 acre feet; 1934, 5.90 acre feet; 1935, 4.42 acre feet; 1936, 5.102 acre feet. The average for the period is 4.3 acre feet.

Plaintiff brought this action to rescind the real estate contract for the sale to him by defendant of the land in question for the reason that the defendant did not have title to a water right for the use of sufficient amount of water to beneficially irrigate the land and to the same extent as has heretofore been used thereon for irrigation purposes.

Defendant answered, praying that the contract be specifically enforced and that he recover an additional payment then due upon the contract. The cause was tried to the court. Both parties moved for judgment on the pleadings. The trial court found that there was appurtenant to the land described in the complaint a perpetual water right for the use of a sufficient amount of water to beneficially irrigate the land and to the same extent as has heretofore been used thereon for irrigation purposes. Judgment was accordingly entered in favor of the defendant. The plaintiff has appealed.

Whether the respondent is the owner of a perpetual water right for the use of a sufficient amount of water to beneficially irrigate the tract of land which he has contracted to sell to the appellant and to the same extent as has heretofore been used on that land for irrigation purposes, is the only question presented by this appeal. If that question is answered in the af-

firmative, respondent is entitled to recover, as there has not been a breach of the contract.

We are clear that there is appurtenant to the land in question a perpetual water right for the use of a sufficient amount of water to beneficially irrigate that tract of land and to the same extent as has heretofore been used on that land for irrigation purposes.

In April, 1891, the Northern Pacific Yakima & Kittitas Irrigation Company appropriated one thousand cubic feet per second of the water flowing in the Yakima river for the purpose of irrigating lands in Yakima county. This company commenced the construction of the Sunnyside canal and the distribution of water to land for agricultural purposes. The canal and water appropriations were acquired in 1900 by the Washington Irrigation Company, which continued the construction of the canal and the distribution of the water.

In 1906, pursuant to the reclamation act of 1902, the United States acquired the canal, water appropriations, and irrigation system, and the secretary of the interior approved the Sunnyside division of the Yakima project. Subsequently, the United States completed the construction of the canal and irrigation system and also constructed storage reservoirs of ample capacity to supply the land described in appellant's complaint and all other lands under gravity flow in the Sunnyside division of the Yakima project, with, as respondent alleged,

" . . . the amount of water necessary to beneficially and successfully irrigate the same and the amount of water required for crops growing on said land, and also the amount of water required to furnish pumping units and Benton extension, with the contract allowance of water to said districts."

Prior to the completion of the irrigation system and preceding the construction of the storage reservoirs to

impound the water to supplement the natural flow of the Yakima river, the secretary of the interior, in 1906, required the land owners in the project to incorporate the Sunnyside Water Users Association and for this association to enter into a contract with the United States. The contract entered into, May 7, 1906, between the association and the United States required, as a condition precedent to the right to the use of water from the works to be constructed, all land owners to subscribe to the contract and become members of the association. Section 3 of the contract contains the following provision:

"(3) That the aggregate amount of such rights to be issued shall, in no event, exceed the number of acres of land capable of irrigation by the total amount of water available for the purposes being (1) the amount now appropriated by the shareholders of the said association, and (2) the amount to be delivered from all sources in excess of the water now appropriated; and the secretary of the interior shall determine the number of acres so capable of such irrigation as aforesaid, his determination to be made upon due and expert consideration of all available data, and to be based upon and measured and limited by the beneficial use of water."

The contract also provides that the land owners were to "initiate rights to the use of water from the said proposed irrigation works," which rights were to be and "continue to be, forever appurtenant to designated lands owned by such shareholders." The association guaranteed full payment of the cost of construction of the irrigation works, which cost was to be apportioned by the secretary of the interior and paid by the land owners. Paragraph ten of the contract provides, relative to the right to the use of the water where the right has vested,

"That in all the relations between the United States and this association and the members of the associa-

tion the rights of the members of the association to the use of water where the same have vested, are to be defined, determined, and enjoyed in accordance with the provisions of the said act of Congress and of other acts of Congress on the subject of the acquisition and enjoyment of the rights to use water, and also by the laws of the state of Washington, . . ."

Pursuant to section 2 of the contract, the then owners of the land entered into stock subscription con-tract which expressly provided that all water

". . . heretofore appropriated by him, or his predecessors in interest, for the irrigation of the lands above described or customarily used thereon, shall become appurtenant to such lands and be and remain incident to the ownership of the above shares appurtenant to such lands. There shall be, further, incident to the ownership of such shares, the right to have such water delivered to the owner thereof by the association for the irrigation of said lands, . . . That the whole amount of water actually delivered to such lands from all sources shall not exceed the amount necessary for the proper cultivation thereof . . .";

and that every transfer of title to the land

". . . shall operate, whether it be so expressed therein or not, as a transfer to the grantee or successor in title of all rights to the use of water for the irrigation of said lands, also all rights arising from or incident to the ownership of such shares as well as the shares themselves, and upon presentation to this association of proof of any such transfer of land the proper officer shall transfer such shares of stock upon its books to the successor in title to said lands."

In March, 1909, the secretary of the interior issued a notice fixing the construction charges for the building of the irrigation system at fifty-two dollars an acre of irrigable land. The reclamation extension act of August 13, 1914 (38 Stat. 687, 43 U. S. C. A. § 469), provided that, after the construction charges had been fixed by public notice, there would be no increase

except by agreement between the secretary of the interior and a majority of water right applicants. That act also provided that the operation and maintenance charges be based upon the total cost of operation and maintenance and upon the basis of the amount of water delivered to each tract of land.

On November 14, 1914, the then owners of the land accepted the terms and conditions of the reclamation act. After the approval of the reclamation act on August 13, 1914, in all cases on the Sunnyside division, a water right application was used which fixed the measure of the water right as follows:

"The measure of the water right for said land is that quantity of water which shall be beneficially used for irrigation thereof, but in no case exceed the share proportionate to irrigable acreage of water supply actually available as determined by the project manager or other proper official of the United States or its successors in the control of the project, during the irrigation season for the irrigation of lands under said unit."

The land was put under cultivation and irrigation in July, 1910. At all times subsequent thereto, the land has been furnished with the use of a sufficient amount of water to beneficially irrigate it, and the land involved in this action has been furnished during the past fifteen years with the amounts of water (the average for the period being 4.3 acre feet) recited above. It has been the custom of the bureau of reclamation to furnish the land sold by respondent to appellant and all other land under gravity flow in the Sunnyside division of the Yakima project with as much water as required for the crops growing thereon, and to beneficially irrigate the same for agricultural purposes to the full extent of the soil, regardless of the number of acre feet required.

In 1930, the commissioner of reclamation recommended the construction of the Cle Elum reservoir.

He ascertained the total cost of this reservoir was one million dollars in excess of the amount that would be returned from the new divisions for which the reservoir was to be constructed. Without consulting the owner of the land involved in this action and owners of other lands in the Sunnyside division, the commissioner of reclamation charged one million dollars of the cost of construction of the reservoir to the water users in the Sunnyside division. For the purpose of collection of that charge of one million dollars, the secretary of the interior on October 17, 1930, issued a notice expressly limiting the measure of the water right to three acre feet, and

" . . . providing that so long as there is surplus stored water available not required to meet the contract obligations of the United States to other parties, water in excess of three acre feet may be rented by water users,"

and that

" . . . all money collected from the rental of such extra water will be applied to the payment of the unsecured portion of the reservoir system of the Yakima project."

On December 11th, 1930, the secretary of the interior recommended in a letter to the president of the United States the construction of the Cle Elum reservoir, and stated in that letter that one million dollars of the cost of the construction of the reservoir would be returned to the reclamation fund by rentals from the Sunnyside division of the Yakima project.

Prior to the construction of the reservoir and irrigation system for the Sunnyside division of the Yakima project, the United States complied with chapter 88 of Session Laws of 1905, p. 180 (Rem. Rev. Stat., § 7408 [P. C. § 3376] *et seq.*), which statute relates to the appropriation of waters of this state for irrigation pur-

poses, and grants to the United States the right to exercise the power of eminent domain in acquiring lands, etc., for irrigation purposes. On May 10, 1905, the bureau of reclamation filed a withdrawal of the waters of the Yakima river, as provided in chapter 88, Session Laws of 1905, p. 180, but failed to comply with the procedural requirements reading as follows, relative to the making of an appropriation of the waters, and proceeded with the construction and completion of the reservoirs and irrigation system and the delivery of the impounded and natural flow of waters to the land in question and to the lands in this division:

"Sec. 4. Whenever said Secretary of the Interior or other duly authorized officer of the United States shall cause to be let a contract for the construction of any irrigation works, or any works for the storage of water for use in irrigation, or any portion or section thereof, for which the withdrawal has been effected as provided in section 3 of this act, any authorized officer of the United States, either in the name of the United States or in such name as may be determined by the Secretary of the Interior, may appropriate, in behalf of the United States, so much of the unappropriated waters of the State as may be required for the project, such appropriation to be made, maintained and perfected in the same manner and to the same extent as though such appropriation had been made by a private person, corporation or association, except as to the time for the initiation, prosecution and completion of the necessary works for the utilization of the waters so appropriated; which time shall be controlled by the provisions of section 3 of this act. Such appropriation by or on behalf of the United States shall inure to the United States, and its successors in interest, in the same manner and to the same extent as though said appropriation had been made by a private person, corporation or association. The title to the beds and shores of any navigable lake or stream utilized by the construction of any reservoir or other irrigation works created or constructed as a part of such appropriation

hereinbefore in this section provided for, shall vest in the United States to the extent necessary for the maintenance, operation and control of such reservoir or other irrigation works." Section 4, chapter 88, Laws of 1905, p. 182.

No attempt was made prior to November 12, 1930, to comply with the statutory procedural requirements relative to the appropriation of the waters of the Yakima river. On November 12, 1930, the United States applied to the department of conservation and development of this state for a permit to appropriate thirteen hundred cubic feet of water to be used in irrigating the land in question and other lands in the Sunnyside division of the Yakima project. The supervisor of hydraulics of the department of conservation and development of this state denied the permit on the ground that the right to the use of the natural flow and impounded waters of the Yakima river by the then owners of the land in question and other lands in the Sunnyside division had become vested as soon as the water was beneficially used thereon for irrigation purposes; and that the right to the use of the impounded and natural flow of waters became vested and took priority as of the time the water was first actually used thereon for irrigation purposes.

In *Colburn v. Winchell,* 93 Wash. 388, 160 Pac. 1052, we held that the United States by various acts of Congress waived its rights as sovereign in and to the government and control of the waters flowing or standing within the boundaries of any state, and conferred the jurisdiction over such waters upon the state.

The title to the water to be stored or appropriated is in the state.

"All non-navigable waters were reserved for the use of the public under the laws of the various arid-land states." *Ickes v. Fox,* 300 U. S. 82, 57 S. Ct. 412, 417.

In reply to the contention of counsel for the United States that the Federal government was the owner of the stored water, the supreme court of the United States in *Ickes v. Fox*, 300 U. S. 82, 57 S. Ct. 412, 417, said:

"Although the government diverted, stored and distributed the water, the contention of petitioner that thereby ownership of the water or water-rights became vested in the United States is not well founded. Appropriation was made not for the use of the government, but, under the Reclamation Act, for the use of the land owners; and by the terms of the law and of the contract already referred to, the water-rights became the property of the land owners, wholly distinct from the property right of the government in the irrigation works. Compare *Murphy v. Kerr*, 296 Fed. 536, 544, 545. The government was and remained simply a carrier and distributor of the water (*ibid.*), with the right to receive the sums stipulated in the contracts as reimbursement for the cost of construction and annual charges for operation and maintenance of the works. As security therefor, it was provided that the government should have a lien upon the lands *and the water-rights* appurtenant thereto—a provision which in itself imports that the water-rights belong to another than the lienor, that is to say, to the land owner."

In *Ickes v. Fox*, 85 F. (2d) 294, 298, which was affirmed by the United States supreme court in *Ickes v. Fox*, 300 U. S. 82, 57 S. Ct. 412, the court said:

"It is settled irrigation law that mere diversion and storage of water does not constitute an appropriation. Before there can be an appropriation the water must be applied to a beneficial use. *Highland Ditch Company v. Union Reservoir Company*, 53 Colo. 483, 127 P. 1025. In *Pioneer Irrigation D. Co. v. Board of Commissioners* (D. C.) 236 F. 790, the court, considering constitutional and statutory provisions similar to those of the state of Washington, held that under the Constitution and statute relating to water rights, as con-

strued by the Supreme Court of the State, no property right can be acquired in the use of water until it is applied to a beneficial use. The owner of the carrying ditch gets no title or right to the use of the water and has no property in it subject to disposal, but such property right of disposal is in him who applies the water to beneficial use.

"It is clear, therefore, that the United States under the proceedings provided in the Reclamation Act acquires no title to the water. It is merely a carrier and distributor of the water, and the only title acquired which consists only of a right of use is in the appropriator who applies the water to a beneficial use. To proceed under the Reclamation Act the United States must make application for a permit to appropriate the waters and to distribute it for beneficial purposes. The state does not surrender its right to control its use. The 1,000 cubic feet appropriated in 1891 was appropriated by the application of the water to beneficial use, and under such circumstances the water becomes a part and parcel of the land and is appurtenant thereto. This rule was recognized in the Reclamation Act (43 U. S. C. A. § 372), where it is specifically provided that the water right is appurtenant to the lands irrigated."

Respondent's water right was acquired pursuant to appropriation and irrigation laws of and from the state of Washington under the reclamation act. The United States relinquished all of its rights to the non-navigable waters of the Yakima river to the territory, and later the state, of Washington. The latter had the right to provide and did provide for the use of those waters and fixed the terms upon which the same might be used. The United States, in the construction of reservoirs and irrigation system and distribution of water therefrom, acted, as counsel for respondent contend, solely under and subject to the appropriation and irrigation laws of this state. The United States never complied with the procedural requirements provided

by § 4, chapter 88, Laws of 1905, p. 182, relative to the appropriation of the waters of the Yakima river. *The right to the use of the* impounded and natural flow *waters was acquired* for the land which is the subject matter of this controversy *by the beneficial use of those waters upon the land* for agricultural purposes (*Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308), *and became a part thereof* (*Ament v. Bickford,* 139 Wash. 494, 495, 247 Pac. 952), whether the water was from natural flow or stored in a reservoir (*Madison v. McNeal,* 171 Wash. 669, 675, 19 P. (2d) 97) *and appurtenant thereto.*

Under the laws and decisions of this state, the only consideration required by the state for the use of the water for irrigation or agricultural purposes is the beneficial application of the water upon the land for the production of crops. In the instant case, this required the construction of the storage reservoirs in the Yakima river and a canal and distribution system to take the water from where it is stored and deliver the same to the land as needed to irrigate it. It was necessary, also, that the land be leveled and that ditches be constructed to distribute the water thereon for irrigation purposes. *As soon as* this was accomplished and *the water was beneficially used on the land for irrigation purposes in 1911, the right to the use of those waters was appropriated by the owner of respondent's land, and he and his successors became entitled to the quantity of water appropriated by the then owner, and there became appurtenant to this land a water right* to the extent necessary to make the land " 'available for agricultural purposes to the full extent of the soil thereof.' " (*Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308.)

The public notice and order of the secretary of the interior under date of October 17, 1930, limiting the

water right to three acre feet, is a nullity. That order was not authorized by Congress. If it were so authorized, such an order would have deprived the respondent of vested rights. The supreme court of the United States said, with reference to suits brought to vacate such an order:

"They are brought to enjoin the Secretary of the Interior from enforcing an order, the wrongful effect of which will be to deprive respondents of vested property rights not only acquired under Congressional acts, state laws and government contracts, but settled and determined by his predecessors in office." *Ickes v. Fox, supra.*

By the use of water in excess of three acre feet for twenty-five years, the respondent acquired complete title by the United States reclamation act, statutes and decisions of this state, and by prescriptive right. We held in 1889, *Geddis v. Parrish,* 1 Wash. 587, 591, 21 Pac. 314, that a water right passes with the land as appurtenant thereto. The water code, § 39, chapter 117, Laws of 1917, p. 465, provides that *the right to the use of water which has been applied to a beneficial use in the state shall be and remain appurtenant to the land or place upon which the same is used.*

Water in excess of three feet had been applied to a beneficial use upon the land involved in this action for a period of six years prior to the enactment of the water code of 1917, which expressly declares that, where water has been applied prior to the date of the enactment of the statute to a beneficial use, it shall be and remain appurtenant to the land. This is a legislative confirmation of *Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308, in which we held that, when a valid appropriation is made, the right becomes vested, and that the water right becomes a part of the land. See, also, *Ament v. Bickford,* 139 Wash. 494, 247 Pac. 952.

The act of July 26, 1866 (43 U. S. C. A. § 661) provides,

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have become vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; . . ."

The foregoing is in harmony with the contract of May 7, 1906, which provides that the owners of the respondent's land must initiate rights to the use of water from the proposed irrigation works and thereafter complete the acquisition of those rights, *which rights shall be and thereafter continue to be forever appurtenant to the land.*

Respondent and his predecessors in ownership of the land have enjoyed the beneficial use of the amount of water necessary to beneficially irrigate the land to the full extent of the soil thereof for agricultural purposes for a period of twenty-five years without let or hindrance from anyone, and by such use the respondent has acquired a prescriptive right which vests title in respondent as completely as if it were conveyed by deed. *Weitensteiner v. Engdahl,* 125 Wash. 106, 215 Pac. 378.

The secretary of the interior is prohibited by the reclamation act (43 U. S. C. A. § 523), which requires the secretary to preserve a first right for respondent's land, and only authorizes him to enter into contract with the Kittitas reclamation district to an extent not exceeding the excess capacity of storage reservoirs required to store sufficient water to furnish respondent's lands and other water users in the Sunnyside division with such amount of water necessary to irrigate their lands to the full extent of the soil thereof, from issuing

more water rights than water is available to beneficially irrigate the land. The contract of May 7, 1906, expressly limits the secretary of the interior in the issuance of water rights so that "the aggregate amount of such rights to be issued shall in no event exceed" the total amount of water available from natural flow and impounded waters, and requires the secretary of the interior to make a determination "to be based upon and measured and limited by the beneficial use of the water." The foregoing act of Congress and contract are in harmony with our holding in *Longmire v. Smith,* 26 Wash. 439, 477, 67 Pac. 246, 58 L. R. A. 308, where we said: '

"It is an elementary principle of the law of appropriation of water for irrigation that the first appropriator is entitled to the quantity of water appropriated by him, to the exclusion of subsequent claimants by appropriation or riparian ownership. *Thorpe v. Tenem Ditch Co.,* 1 Wash. 566 (20 Pac. 588); *Geddis v. Parrish,* 1 Wash. 587 (21 Pac. 314); Black, Pomeroy's Water Rights, § 68, and following. When a valid appropriation is made, the right, according to all the authorities, becomes vested."

The judgment is affirmed.

HOLCOMB, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

BEALS, J. (concurring in the result)—This action is pending between respondent as vendor in a contract for the sale of real estate and appellant as his vendee. The facts are clearly stated in the majority opinion. Each party moved for judgment on the pleadings, and the cause was submitted to the court and determined upon these motions, no evidence having been taken. From the allegations in the pleadings, which, of course, were taken as true, the trial court found, as stated in the decree, no findings of fact having been separately

entered, that there existed, as appurtenant to the land described in the complaint,

"... a perpetual water right for the use of a sufficient amount of water to beneficially irrigate said land and to the same extent as has heretofore been used thereon for irrigation purposes."

I am in accord with the holding of the majority that the judgment appealed from should be affirmed, but I desire to make clear my view that the judgment means no more than that, as between the parties to this action, the contract which is the subject matter thereof is good and should be enforced. The parties chose to submit the cause upon motions for judgment on the pleadings, which admitted all the allegations contained in the complaint and the answer thereto. No evidence was taken, the parties having, in effect, submitted to the court for determination a question of law to be decided upon an agreed statement of facts. This they were entitled to do, and their respective rights under the contract must be determined.

It is evident, however, that the real question as to the amount of water which appellant is entitled to receive, can only be heard and decided in some proceeding to which the Federal, and possibly the state, authorities are parties, and it is probable that other persons using water from the same source as that which serves the land in controversy must also be heard from. In my opinion, the judgment appealed from, and which we affirm, leaves the basic question of distribution of the water, a portion of which serves the land here in question, entirely open for determination in subsequent litigation, if any ever arise, and that no question is here determined save the very narrow issue of whether or not, upon the facts as pleaded and admitted by the parties to this litigation, the contract as between them is, as between themselves, good

and should be carried out. No questions of fact have been determined in this case by judicial finding.

This being my view of the situation presented by this litigation, I concur in the conclusion reached by the majority.

BLAKE, J. (dissenting)—As indicated in the majority opinion, the decision of this case must turn upon the question of whether there is a perpetual water right appurtenant to the land the defendant agreed to convey,

". . . sufficient [in] amount of water to beneficially irrigate said land and to the same extent as has heretofore been used thereon for irrigation purposes."

It is admitted that from 1920 to 1936, inclusive, there had been an average of 4.3 acre feet of water used on the land, and that that amount is necessary to "beneficially irrigate" it. If there is not such a quantity appurtenant to the land, plaintiff is entitled to rescind the contract and recover what he has paid on the purchase price. *Babcock, Cornish & Co. v. Urquhart,* 53 Wash. 168, 101 Pac. 713.

May 10, 1905, the United States government withdrew the waters of the Yakima river for the purpose of impounding them and delivering them for irrigation of lands in the Yakima valley. It does not appear from the record that there were then any water rights appurtenant to the land—nor thereafter, until 1911. On August 1st of that year, Frank H. Sharkey, the then owner of the land, made an application to the interior department for

". . . 3 acre feet of water per annum per acre of irrigable land, . . . *or so much thereof as shall constitute the proportionate share per acre from the water supply actually available for the lands under said project; Provided, That the supply furnished shall*

*be limited to the amount of water beneficially used on said irrigable land.*"

This application was granted.

It seems to me that this application and grant plainly and unambiguously provide for a maximum water right of three acre feet. This view is tacitly admitted by the majority, for they hold that the vendor and his predecessors in interest have acquired a prescriptive right to the use of water in excess of three acre feet. If there be such a prescriptive right, it has never been adjudicated. And such right can not be effectively adjudicated in this action. For the prescriptive right must be established (if it can be, which I doubt) against the government of the United States, which is not a party here. At best, all that the vendor (defendant) is able to convey under his contract is the right to the use of three acre feet and a *claimed prescriptive right* to the use of water in excess of that amount. In other words, the defendant seeks to acquit himself of his covenant with respect to the water appurtenant to the land by passing along to the plaintiff a lawsuit against the United States.

Since the defendant agreed to sell plaintiff an amount in excess of three acre feet, and since he can not perform his contract, plaintiff is entitled to rescind on the ground of substantial failure of consideration. *Babcock, Cornish & Co. v. Urquhart, supra.*

STEINERT, C. J., and MAIN, J., concur with BLAKE, J.