[No. 31355. Department Two. August 31, 1950.]

WILL L. BARKER *et al., Appellants*, v. SUNNYSIDE VALLEY IRRIGATION DISTRICT *et al., Respondents.*[1]

[1] Reported in 221 P. (2d) 827.

D. H. *Bonsted* and *Gavin & Robinson*, for appellants.
*Stephen E. Chaffee*, for respondents.

MALLERY, J.—This representative action was instituted by appellants against respondents to procure a decree requiring delivery of water to their lands for irrigation purposes, in such a manner that the lands might be beneficially irrigated, and to declare certain rules, adopted by the Sunnyside Valley Irrigation District for water deliveries, invalid. The court sustained the rules and dismissed the action.

The background of this case will be found in *Caruthers v. Sunnyside Valley Irrigation District*, 29 Wn. (2d) 530, 188 P. (2d) 136. In that case the history of the Sunnyside irrigation project and the contracts of water users is related *in extenso*. It may be summarized as follows:

The Washington Irrigation Company deeded its irrigation system to the United States on June 23, 1906. It was agreed in the contract that the United States would furnish water to certain lands retained by the company, or its successors, for an operation and maintenance charge of one dollar per acre per year. This right had been sustained by a court de-

cree as of the time the Washington Irrigation Company acquired the system. After the United States took over the operation, it entered into supplemental water right contracts with other land owners, both prior and subsequent to August 13, 1914, the date of the reclamation extension act (43 U. S. C. A., 340, § 492). Thirty-five thousand acres of land were reclaimed during the tenure of the United States, and annual charges and assessments were made against these lands by issuance of public notice. For this reason these lands became known as "Public Notice" lands. The amount charged for operation and maintenance usually exceeded one dollar per acre per year. In 1945, the United States conveyed the system to the Sunnyside Valley Irrigation District, and it agreed to fulfill the obligations that had been previously imposed upon the United States. In the fall of 1945 the district fixed an operation and maintenance charge against all of the lands in the district in excess of one dollar per acre per year, whereupon Caruthers brought a representative action seeking a determination that the district was contractually bound to furnish water according to the contracts, just as the United States had been.

This court affirmed the judgment of the trial court in that case, and held that the contracts taken over by the United States, and the supplemental contracts entered into by the United States, both prior and subsequent to the reclamation extension act of 1914, were valid and binding upon the Sunnyside Valley Irrigation District, except for water requested and delivered in excess of that which was by the contracts included in the one dollar per acre rate. The decree did not determine the rate basis upon which the operation and maintenance charge should be made for the delivery of excess water.

The district then shifted items of expense of operation and maintenance to the general expense account, and made an operation and maintenance charge of two dollars per acre-foot of excess water delivered to such lands.

The plaintiffs in the *Caruthers* case, thereupon, filed a petition seeking enforcement of the decree and to have determined the items of expense chargeable as operation and

maintenance, and, also, to require the district to refund illegal assessments which it had collected. The court made findings of fact and entered a decree determining the items of expense constituting operation and maintenance, and required the district to base operation and maintenance charges for the delivery of excess water upon the formula prescribed by section 5 of the reclamation extension act, which charge, at that time, was eighty-nine cents per acre-foot.

The court found and decreed that the lands (excepting "Old Supplemental" lands having contracts prior to August 13, 1914) covered by the old contracts were entitled to have delivered to them 2.62 acre-feet of water for an operation and maintenance charge of one dollar per acre per year. The "Old Supplemental" landowners, having contracts prior to August 13, 1914, were entitled to have water delivered according to the "Johnston Determination" at an operation and maintenance charge of one dollar per acre per year. The court made no determination of the extent of the water rights appurtenant to the lands. This was not necessary as, in the cases of *Lawrence v. Southard,* 192 Wash. 287, 73 P. (2d) 722, 115 A. L. R. 1308, *Ickes v. Fox,* 300 U. S. 82, 81 L. Ed. 525, 57 S. Ct. 412, and *Fox v. Ickes,* 137 F. (2d) 30, it had been decided that the water rights appurtenant to the supplemental and public notice group lands gave to them a sufficient amount of water for their beneficial irrigation, regardless of any contractual amount of cost or method by which such amount would be calculated.

During the bureau of reclamation operation of the Sunnyside canal (except short periods not now material), and the 1945 to 1947 operation by the district, water was delivered in sufficient quantities and at the times needed to beneficially irrigate the lands whenever there was an available supply therefor, and the flow of water was diminished or cut off whenever the water users so requested.

The record shows that the term "beneficial irrigation" has come to mean the amount of water needed for the successful growing of diversified crops. To this end, it is neces-

sary that there be a delivery of varying amounts of water at different times, to satisfy particular requirements. This was recognized and provided for by the bureau of reclamation during the time it operated the Sunnyside canal. It was done by the district in the years 1945, 1946 and 1947, and is now being done for the public notice group of landowners. It appears that the same will be done for the supplemental contract landowners *if* they will abandon their contracts and enter into new ones with the district, the effect of which will be to put them on a public notice landowner basis.

On April 1, 1949, the district adopted a set of rules (instructions to ditchriders) for the delivery of water. The public notice group of landowners were to receive beneficial use, that is, a sufficient quantity of water delivered at such times as requested to beneficially irrigate their lands and crops. The old contract landowners having contracts prior to August 13, 1914, would be delivered water to the extent of the "Johnston Determination," as it is explained in the *Caruthers* opinion (the amount receivable for one dollar per acre per year), but on a *continuous flow, monthly schedule basis*. Extra water might be purchased and paid for in advance, in which event delivery would be made as requested until it was used. There was, also, a rule that had been theretofore promulgated, and which does not appear to have been abrogated, to the effect that any supplemental landowner, who surrendered his contract and entered into a district supplemental contract, would be delivered water on the same basis as the public notice group were served. Those who refused to surrender their contracts would have their water delivered on a continuous flow basis rather than a beneficial use basis.

It thus appears that, notwithstanding the monthly percentage schedule basis of delivery of water by the United States into the canal, the district can, if it is so disposed, deliver water to the water users in sufficient amounts to beneficially irrigate their lands and make such deliveries at times and with such heads of water as will be most beneficial to the particular kinds of crops raised. Only a refusal to sur-

render their contracts stands between these landowners and water delivery on a beneficial basis.

■ It may be conceded, as contended by respondents, that the district has the power to make and enforce rules and regulations for the guidance of its officers, agents and employees in the operation and maintenance of the irrigation canal and distribution system, in connection with the performance of the duties of the district in carrying out the contracts of the water users it has assumed. Rem. Rev. Stat., § 7428 [P.P.C. § 679-31]. However, such rules and regulations must conform to existing contracts and decrees of the court. Such rules and regulations must not be made arbitrarily or capriciously. See *Wenatchee Reclamation Dist. v. Titchenal,* 175 Wash. 398, 27 P. (2d) 734. They must be nondiscriminatory in their operation and effect, and be free from coercive aspects.

■ The rules and regulations before us do not meet the foregoing tests. They are discriminatory and are in conflict with the contracts held by the appellants and affirmed by the *Caruthers* case. The instructions to ditchriders, here in question, are as follows:

"2. *Public Notice Lands,* New Supplemental, District Supplemental, and Warren Act lands will be delivered water as in 1945, 1946 and 1947.

"3. *W. I. Lands,* will be delivered water as usual, 2.62 acre-feet, continuous flow.

"4. *Old Supplemental,* signed up after August 13, 1914, and *Special Supplemental* lands, will be delivered 2.62 acre-feet *continuous* [italics ours] flow. Excess water may be ordered at the office and paid for in advance, and delivery will then be made as requested until excess is used.

"5. *Old Supplemental,* signed up prior to August 13, 1914, will be delivered water on Johnston Determination, on monthly schedule. Excess water may be ordered at the office and paid for in advance, and delivery will then be made as requested until excess is used."

The discrimination becomes apparent upon a reading of the seventh item of the instructions:

"7. *Amended Supplemental.* When a landowner completes an amended supplemental contract, the ditchrider

will be notified. *Amended Supplemental contract lands will then be the same as Public Notice Lands* [italics ours]."

The lands designated in the above instructions to ditchriders as "W. I. Lands," "Old Supplemental" lands, signed after August 13, 1914, and "Special Supplemental" lands are those whose contract rights to 2.62 acre-feet of water per year at the rate of one dollar per acre, were settled and determined by the *Caruthers* case. The fact is accepted that "Public Notice" lands, acquired after the aforesaid lands, will, in all likelihood, always be subject to a higher charge for water. The difference in the water charges between the old and the later landowners is the result of giving effect to the old contracts. Water charges cannot be equalized in the district without destroying those vested contract rights. The attempts of the district to equalize the water charges by indirection, through discrimination in the times of water delivery, is not permissible, since it would, in effect, destroy the contracts.

We, therefore, hold that, as to deliveries of water, all landowners must be treated alike, and that as to the charges for water delivery the district must give the old contract holders the benefit of their contracts, and that equality of water charges as to all the lands in the district must be in effect after, and only after, the fulfillment of the old contracts.

All excess water, beyond the terms of the old contracts, must be distributed upon a nondiscriminatory basis with the other lands, and the benefit of the contracts cannot be taken from the old contract holders by discriminatory practices with regard to such excess water.

The respondents seek to justify the rules quoted above upon the theory that, inasmuch as water is delivered into the canal on a monthly percentage schedule basis, it must, therefore, follow that the district may deliver water on a continuous flow basis, and in proportion to the monthly delivery schedule, to such lands as it chooses to designate. In this case, the "Old Contract" lands are singled out for

such delivery, while the "Public Notice" lands receive water on a beneficial use basis.

If, by treating all of the lands alike, as we herein require, it is impossible by uniform regulations to supply water when needed because of the rate at which it is received by the district, the hardship must, of course, be borne equally. But, we think, such is not the case. In any event, the instructions to ditchriders, hereinbefore set out, are patently discriminatory and indirectly destroy the contract rights that were affirmed by the *Caruthers* case.

■ A plea of *res judicata* has been tendered by respondents and interveners. They assert that the validity of similar rules to those now before the court were litigated when the petition for the enforcement of the *Caruthers* decree was heard and determined. This contention is not borne out by the record. The district was cited to appear before the court to show cause why the decree entered on January 18, 1947 (the original *Caruthers* decree affirmed by this court), should not be enforced, obeyed and carried out, which included incidental relief, such as determining the items making up the operation and maintenance budget, and the formula by which the operation and maintenance charge for excess water should be determined. The supplemental declaratory judgment and decree determined the amount of water to be delivered for an operation and maintenance charge of one dollar per acre, the method for making an operation and maintenance charge for the delivery of excess water, the items making up the operation and maintenance budget, and provided a method for refund of illegal assessments theretofore made. The rules now under consideration were not before the court on the show cause hearing, and we cannot assume that the court adjudicated anything not comprehended in the supplementary decree. *Donahoe v. Pratt*, 190 Wash. 103, 66 P. (2d) 873.

The Sunnyside Valley Irrigation District does not own the water carried in the Sunnyside canal and cannot sell or rent it. All of the water carried by the canal, regardless of the source from which it comes, is appurtenant to the lands served. The Sunnyside Valley Irrigation District,

a carrier and a distributor of water, is a municipal corporation. It has assumed the obligation to carry and distribute water sufficient in amount to beneficially irrigate the lands of the landowners in so far as such water may be available, and at times and in a manner most conducive to the raising of different kinds of crops, all in accordance with existing contracts, decrees of court, applicable principles of law, and *without discrimination.*

The judgment is reversed, and the case remanded for the entry of a decree not inconsistent with this opinion.

SIMPSON, C. J., ROBINSON, HILL, and HAMLEY, JJ., concur.

