[No. 57064-7.   En Banc.   August 15, 1991.]

HERMAN WILLY NEUBERT, ET AL, *Respondents,* v. YAKIMA-TIETON IRRIGATION DISTRICT, *Appellant.*

*G. Scott Beyer* and *Michael F. Shinn* (of *Gavin, Robinson, Redman, Pratt & Crollard, Inc., P.S.*), *Donald H. Bond* (of *Halverson & Applegate, P.S.*), for appellant.

*J. Eric Gustafson* and *Randall L. Ommen* (of *Lyon, Beaulaurier, Weigand, Suko & Gustafson*), for respondents.

DOLLIVER, J. — This action challenges the validity of a resolution adopted by the Board of defendant Yakima-Tieton Irrigation District (YTID). The resolution established a water access preference for frost protection water users over general water users. The trial court found the resolution improperly interfered with existing water rights. We agree.

Plaintiffs are individual owners of land and related water rights in Yakima County. Plaintiffs' predecessors in interest acquired title to the land by patent deeds issued by the United States Government in 1895. Plaintiffs' predecessors acquired the water rights through patent deeds issued by the United States Government under the Reclamation Act of 1902. 43 U.S.C. §§ 372, 373.

In 1906, plaintiffs' predecessors formed the Tieton Water Users' Association (TWUA) to provide an entity to deliver water from the Tieton River to users within the Yakima Valley. Shortly after its inception, TWUA entered into a contract with the United States Government for construction of irrigation works. As a condition precedent to receiving water from the newly constructed irrigation works, landowners were required to join TWUA and assign their water rights to TWUA. In return, TWUA shareholders obtained the right to receive a proportionate share of all water available to TWUA. Water was first delivered to TWUA shareholders in 1910.

Defendant YTID was established by the Yakima County Commissioners in 1918 and is governed by RCW 87.03. In 1945, TWUA adopted a resolution of dissolution and YTID expressly assumed all rights and obligations of TWUA. In 1947, the United States and YTID entered into an agreement transferring the maintenance and operation of the irrigation works to YTID.

Prior to 1986, YTID delivered water to individual users through a system of open ditches and water gates. Before the start of the irrigation season in late April, water gates were left unlocked allowing users to take water as needed. Once the irrigation season began, however, water gates were unlocked only if users paid their fees and users were limited to their proportionate share of water. As of 1973, YTID defined a share of water as 2.41 acre feet per year or 3.6 gallons per minute on a continuous flow.

In 1977, YTID began to consider replacing the open ditch system with a pressurized pipe system. The existing open ditch system suffered from inefficiency and wastefulness and was in need of major repairs. The plan ultimately adopted by YTID in 1978 called for installation of pipes and reservoirs larger than necessary for existing uses in order to create an excess capacity for frost protection. In YTID's application to the Department of Ecology for a reservoir construction permit, YTID indicated its desire to store water for "irrigation (frost protection), irrigation reregulation, spray and cistern."

Even with the expanded system, there would not be enough water available to guarantee all water users frost protection. Consequently, YTID elected to limit the availability of the new frost protection service and to assess the added costs of the larger system against those users. Ultimately, 227 of approximately 1,320 farm water users signed up. Plaintiffs, who already used part of their annual water allotment for frost protection, did not sign

up despite warnings from YTID the service would later be difficult to obtain. At that time both YTID and plaintiffs believed the new frost protection service would come out of the newly created excess without affecting existing use.

After a particularly hard frost in 1985, the YTID Board adopted Resolution 87-9 which distinguished "irrigation water" and "frost water" and allowed YTID to interrupt water service to general water users in order to ensure an adequate supply to persons who had contracted for frost protection. After a series of public meetings, the YTID twice again adopted the resolution with only minor modifications. As Resolution 88-4 exists today, it allows YTID to interrupt service to "irrigation water" users if necessary to ensure provision of "frost water" under the frost protection agreements. The provision has been invoked only once.

Plaintiffs brought this action challenging the validity of Resolution 88-4. The trial court granted summary judgment for plaintiffs. The court found YTID has no authority to adopt new resolutions which give the new frost protection service priority over existing general water users, and the resolutions in question were adopted in an improper manner. The court concluded the plaintiffs hold a right to a pro rata share of all water available which may not be abridged by prioritization. This appeal followed.

■ As this is a review of a summary judgment order, we engage in the same inquiry as the trial court. *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 351, 779 P.2d 697 (1989). Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). Neither party alleges any issue of material fact. YTID challenges only the trial court's legal conclusions.

The first issue is whether frost protection is included within plaintiffs' existing water rights. The trial court found that it is. We agree.

■ ■ Although YTID's argument heavily emphasizes contract principles of original intent, plaintiffs' water rights are governed by the doctrine of appropriation, not contract law. *Fox v. Ickes*, 137 F.2d 30, 33 (D.C. Cir. 1943). The doctrine of appropriation was established in this state in 1873 when the territorial Legislature enacted a right "to the use and enjoyment of the waters of the streams or creeks in [Yakima C]ounty for the purposes of irrigation and making said land available for agricultural purposes to the full extent of the soil thereof." Laws of 1873, § 1, p. 520. Once appropriated, the right to use a given quantity of water becomes appurtenant to the land. *Lawrence v. Southard*, 192 Wash. 287, 300, 73 P.2d 722, 115 A.L.R. 1308 (1937). The appropriated water right is perpetual and operates to the exclusion of subsequent claimants. *Longmire v. Smith*, 26 Wash. 439, 447, 67 P. 246 (1901).

The key to determining the extent of plaintiffs' vested water rights is the concept of "beneficial use". The United States Supreme Court has held, "Under the Reclamation Act, *supra*, as well as under the law of Washington, 'beneficial use' was 'the basis, the measure and the limit of the right.' " *Ickes v. Fox*, 300 U.S. 82, 94, 81 L. Ed. 525, 57 S. Ct. 412 (1937); *see also* Reclamation Act, ch. 1093, § 8, 32 Stat. 388 (1902) (codified as amended at 43 U.S.C. § 372 (1988)); *Lawrence*, 192 Wash. at 300 ("the only consideration required by the state for the use of the water for irrigation or agricultural purposes is the beneficial application of the water upon the land for the production of crops"); *United States v. Ahtanum Irrig. Dist.*, 330 F.2d 897, 904 (9th Cir. 1964) ("The beneficial use is the test and the measure of an appropriative right."). An appropriated water right is established and maintained by the purposeful application of a given quantity of water to a beneficial use upon the land.

YTID concedes the use of water for frost protection is a beneficial use. Nevertheless, YTID argues the plaintiffs have not appropriated this particular beneficial use. YTID claims the appropriation of a quantity of water for the nourishment of roots does not include the right to apply that same quantity of water to the beneficial use of frost protection.

■ An appropriated water right is limited by the time and volume of the original beneficial use. "[U]niversally recognized as a part of the law of waters in the western states [is the rule] that a water right may be measured by time as well as by volume." *Ahtanum*, 330 F.2d at 908. YTID now seeks to extend the rule to include limitations of purpose as well. However, we have previously rejected such a limitation. In *In re Alpowa Creek*, 129 Wash. 9, 224 P. 29 (1924), we quoted with approval:

> "The appropriator of water is not limited in its application to that use for which he made the appropriation. On the contrary he may apply the water to any beneficial use that he chooses, and in changing from one use to another he does not in any way lessen his rights or forfeit his priority as an appropriator. If this were not true, a change of circumstances by which the use of the water for the purpose first contemplated would no longer be profitable would result in a practical destruction of the appropriator's interest therein, and in a loss by him of all the water and of the appliances by which it had been diverted, however valuable . . . The appropriation having become perfect by the diversion of the water and its application to a useful purpose, the appropriator and his successors in interest acquire the right to use the water thus actually appropriated, either for the purpose originally contemplated or for any other lawful purpose."

*Alpowa Creek*, 129 Wash. at 16 (quoting 27 R.C.L. 1279 (1920)). Therefore, while plaintiffs' water rights may be limited by both time and volume, the water may be applied to any beneficial use. Only nonbeneficial uses are not within the existing water right. Since frost protection is conceded to be a beneficial use, the right to use water for frost protection is within plaintiffs' existing water rights. *Cf. McPhee v. Kelsey*, 44 Or. 193, 198-201, 74 P.

401, 75 P. 713 (1903) (may arguably limit appropriated water rights by purpose as well as by time and volume).

█ █ Even if we were to limit water rights by discrete beneficial uses, we could not so narrowly construe irrigation as to exclude frost water protection. Federal law broadly defines "irrigation water" as "water made available for agricultural purposes". 43 U.S.C. § 390bb(5). Similarly, most cases discussing a beneficial use for irrigation imply a construction much broader than merely nourishing plant roots. In *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851 (9th Cir. 1983), the court interpreted the Reclamation Act of 1902 to find beneficial use encompassed the right to receive sufficient water for a sufficient period of time to produce "a maximum amount of such crops as ordinarily are grown". *Alpine Land*, at 854 (quoting *Farmers Highline Canal & Reservoir Co. v. Golden*, 129 Colo. 575, 584-85, 272 P.2d 629, 634 (1954)). Similarly, in *Lawrence*, 192 Wash. at 300, we stated:

> [T]he only consideration required by the state for the use of water for irrigation or agricultural purposes is the beneficial application of the water upon the land for production of crops.

*See also Longmire*, 26 Wash. at 448 (quoting Laws of 1873, § 1, p. 520) ("the measure of the appropriation . . . is the making of 'said land available for agricultural purposes to the full extent thereof.' "). A broad construction of beneficial uses which treats all agricultural uses collectively is also consistent with this state's original appropriation law which provided a right to appropriate water "for irrigation, mining or manufacturing purposes . . .". Laws of 1891, ch. 142, § 1, p. 327.

Finally, our conclusion is consistent with the policies of the Washington State Department of Ecology (DOE), which include frost water protection within existing irrigation water rights. The author of the DOE's Reservoir Report of Examination stated:

The DOE did not require YTID to apply for a change of use in this case because the agency viewed the use of water to protect against frost as a portion of the existing right to use of water to irrigate.

While the DOE's conclusions are not controlling, they are entitled to "great weight". *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990).

Based on the preceding authority, we hold plaintiffs' existing water rights include the right to apply the water to any beneficial use, including frost protection.

Nevertheless, YTID argues it possessed the authority to adopt the resolutions in question. RCW 87.03.115 provides:

The board shall have the power, and it shall be its duty . . . to establish equitable bylaws, rules and regulations for the government and management of the district, and for the equitable distribution of water to the lands within the district . . ..

YTID argues adoption of the resolutions merely fulfilled its obligation to provide for the equitable distribution of water. The water users who signed up for frost protection contracted to repay $3.4 million in excess capital costs. Therefore, YTID concludes Resolution 88-4 was necessary to deliver equitably to frost protection water users the water service for which they paid.

■ However, YTID's authority to adopt equitable rules for water distribution is not unlimited. *See Barker v. Sunnyside Vly. Irrig. Dist.*, 37 Wn.2d 115, 120, 221 P.2d 827 (1950). In particular, YTID's authority is subject to at least two fundamental principles of irrigation water law — first in time is first in right and properly adopted rules and regulations may not be arbitrary, capricious, or discriminatory.

Among the most basic principles of the doctrine of appropriation is the notion of first in time, first in right. We long ago stated:

It is an elementary principle of the law of appropriation of water for irrigation that the first appropriator is entitled to the quantity of water appropriated by him, to the exclusion of subsequent claimants . . ..

*Longmire*, 26 Wash. at 447. This principle has now been codified by RCW 90.03.010, which provides, "[A]s between appropriations, the first in time shall be the first in right." We have determined plaintiffs possess a right to use their proper allotment of water for any beneficial use including frost protection. YTID may not interfere with that right by subrogating plaintiffs' water access to the new frost protection users.

The second fundamental principle which limits YTID's authority to adopt equitable rules of distribution is the prohibition against arbitrary, capricious, and discriminatory rules. In *Barker*, 37 Wn.2d at 120, we stated:

> Such rules and regulations must not be made arbitrarily or capriciously. They must be nondiscriminatory in their operation and effect, and be free from coercive aspects.

(Citation omitted.)

We agree with the trial court's finding that Resolution 88-4 improperly discriminated against ordinary water users. This case is very similar to our decision in *Barker*. In *Barker*, the Sunnyside Valley Irrigation District sought to reduce long-time water users to a continuous flow basis only while allowing newer users to continue taking water on an as-needed basis. The restriction was adopted in part to compensate for the older water users' lower monthly fee. We struck down the action as an impermissible discrimination. *Barker*, 37 Wn.2d at 121. Although *Barker* emphasized contract principles, we believe the rule is equally applicable here. YTID may not discriminate against general water users by creating a preference in favor of those who elected to sign up and pay for the extra frost protection service. Just as the discrimination in *Barker* would have destroyed existing contractual water rights, the discrimination here would have partially destroyed vested appropriated water rights.

We hold plaintiffs' existing water rights include the right to use their proportionate share of water for frost protection. YTID's Resolution 88-4 improperly interfered with plaintiffs' rights by subrogating their rights to the

new frost protection service. The resolution violated both the rule of first in time, first in right and the prohibition against discriminatory rules. Because we invalidate Resolution 88-4 and its predecessors on this basis, we need not reach plaintiffs' statutory and due process claims.

The trial court's summary judgment order invalidating YTID Resolution 88-4 is affirmed.

DORE, C.J., and UTTER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied October 16, 1991.